**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CRISTIAN FAVELA PEREZ a/k/a** | § | |
| **CRISTHIAN FAVELA PEREZ,** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | |
| | § | **No. 4:23-CV-755-O** |
| **BOBBY LUMPKIN, Director, Texas** | § | |
| **Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The matters before the Court are (1) Perez's federal habeas corpus petition, filed July 20, 2023 (ECF No. 1); (2) Respondent's Answer, filed November 16, 2023 (ECF No. 11); and (30 Perez's Reply brief, filed December 12, 2023 (ECF No. 13). For the reasons set forth below, Perez is entitled to neither federal habeas corpus relief nor a Certificate of Appealability from this Court.

### I.    BACKGROUND

#### A.  Perez's Confession

The Texas Court of Appeals decision affirming Perez's criminal convictions accurately recited the factual basis for the criminal proceeding against Perez as follows:

> In October 2016, Perez walked into an Arlington Police Department station and orally confessed to sexually abusing Marie,[1] a family member. Officer Vincent Vasquez testified that Perez stated that he had touched Marie's breasts, vagina, and anus over the previous eight years, beginning when Marie was three or four. Perez then executed the following written statement:
>
> > I, Cristhian Perez, have touched [Marie] for the past 8 or five years and I feel as if I need to voluntarily give myself up as peacefully as possible to the law of Texas. I think it, being the molestation, started when she was 4 years old and I may have been 15 and this continued on and off for eight or five years and stopped two summers ago. I

1

touched her vagina and buttox [sic] and breasts, and regret my detrim[ ]ental mistakes. I hope me coming in will ease her mental state because she's possibly suicidal.

After his oral confession to Officer Vasquez and his execution of the written statement, Detective Mary Tenorio interviewed Perez. A video recording of the interview was admitted and shown to the jury. In it, Detective Tenorio began the interview by asking Perez for his basic information—name, address—and then reading him his rights. After reading each individual right, she asked if he understood, to which he said yes. When finished, she asked him to sign a card stating each of his *Miranda* rights, and he did.

Perez then provided a detailed confession of multiple instances of his sexual abuse of Marie. Throughout, his demeanor remained calm, but 37 minutes into the interview, he told Detective Tenorio that he had given up on school because of plans to kill himself and that he was feeling "a little suicidal" right then. He started crying, and he told Detective Tenorio that he had thought about how he would kill himself and, "It[ would] be a little easier on everyone else if I was dead." At that point, Detective Tenorio text messaged her sergeant about her concerns for Perez's mental health and wellbeing. Later in the interview, he again mentioned that he had considered how to kill himself and thought about buying a gun. When Detective Tenorio asked, "Do you feel like you might kill yourself if you leave here today?" he answered, "Yes." He mentioned that he had previously been diagnosed with and taken medication for depression but had stopped taking the medication about a year prior.

After fifty minutes, Detective Tenorio stepped out to complete paperwork, leaving Perez alone in the interview room. Perez can be heard on the video recording muttering, "I wish I could kill myself right now," praying, and whispering a series of numbers over and over. At times, he appeared to be crying. Eventually, Detective Tenorio returned and explained that two officers would escort Perez to John Peter Smith hospital for a mental evaluation.

Perez was subsequently charged with continuous sexual assault, three counts of aggravated sexual assault, and three counts of indecency with a child by contact. *See* Tex. Penal Code Ann. §§ 21.02(b), 21.11(a), 22.021(a).

Two months after his confession, MHMR assessed Perez's mental health and concluded that he had a mental illness—depression—but was not incompetent to stand trial and did not need a competency evaluation, though it did recommend a psychiatric evaluation. A month after that, upon the request of Perez's trial counsel, the trial court appointed Dr. Barry Norman to evaluate Perez and assist in his defense. Dr. Norman concluded that Perez was incompetent to stand trial and recommended his commitment, and the trial court adopted his opinion in February 2017. A year later, the trial court concluded that Perez remained incompetent and

2

extended Perez's commitment. It noted its findings that Perez had been diagnosed as bipolar, was likely to cause serious harm to others, and was suffering severe and abnormal mental, emotional, or physical distress; was experiencing deterioration of his ability to function independently, exhibited by his inability to provide for his needs; and was unable to make a rational and informed decision as to whether or not to submit to treatment. A few months later, Perez was found competent to stand trial.

After a three-day trial in April 2019, Perez was found guilty of continuous sexual abuse and indecency with a child and sentenced to 75 and 20 years' confinement, respectively.

*Perez v. State*, 02-19-00163-CR, 2020 WL 6788196, *1-*2 (Tex. App. – Fort Worth, Nov. 19, 2020, *pet. ref'd*).

## B. Indictment

On February 24, 2017, a Tarrant County grand jury returned a seven-Count indictment charging Perez with continuous sexual abuse, three Counts of indecency with a child by contact, and three Counts of aggravated sexual assault.[1]

## C. Trial

The guilt-innocence phase of Perez's trial commenced on April 9, 2019. The prosecution presented the testimony of (1) the two Arlington police officers who interviewed Perez when he presented himself at the police station and confessed to having sexually abused his minor niece, (2) Perez's then-fourteen-year-old niece, (3) a forensic interviewer who interviewed Perez's then-twelve-year-old niece, and (4) the Sexual Abuse Nurse Examiner who conducted an examination

---

[1] Copies of the indictment against Perez appear at pages 7-8 of ECF No. 10-14 (Clerk's Record Volume 1 of 1) and pages 5-6 of ECF No. 10-25 (Clerk's Record from Perez's state habeas corpus proceeding). Count One charged Perez with two or more acts of aggravated sexual abuse of a child under the age of fourteen throughout the time period May 24, 2009 to May 31, 2016, during which period Perez was seventeen years old or older, i.e., continuous sexual abuse. Count Seven charged Perez with an act of indecency with a child (i.e., touching the breast of a child under the age of seventeen) on May 31, 2016, i.e., indecency with a child.

of Perez's minor niece.[2]  The jury returned its verdict on April 11, 2019, finding Perez guilty of Counts One and Seven.[3]

The punishment phase of Perez's trial began later the same day.[4]  The jury returned its verdict later the same day, imposing a sentence of 75 years on Count One and 20 years plus a fine on Count Seven.[5]

### D. Direct Appeal

Perez appealed.[6]  Perez presented two points of error on direct appeal: (1) the trial court erred in admitting Perez's statements to police because they were not voluntary; and (2) the trial court erred in admitting evidence of Perez's extraneous sexual offenses committed when he was a juvenile.  The Texas Court of Appeals affirmed Perez's conviction and sentences.  *Perez v. State*, no. 02-19-00163-CR, 2020 WL 6788196 (Tex. App. – Fort Worth, Nov. 19, 2020, *pet. ref'd*).  The

---

[2] The verbatim transcription of the testimony and all other proceedings during the guilt-innocence phase of Perez's trial appears at Volumes 3-5 of the Reporter's Record (henceforth "R.R."), i.e., ECF Nos. 10-18, 10-19, & 10-20.  The first day of trial jury heard testimony from Arlington police detective Mary Tenorio, who interviewed Perez and took his recorded statement. 3 R.R. [ECF No. 10-18] 36-64.  The following day, the jury heard (1) more testimony from detective Tenorio regarding her dealings with Perez, 4 R.R. [ECF No. 10-19] 8-26; (2) Arlington police officer Vincent Vasquez, who took Perez's written statement, 4 R.R. [[ECF No. 10-19] 27-39; (3) Perez's then-fourteen-year-old niece who testified about the years of sexual abuse Perez inflicted on her starting when she was three or four years old, 4 R.R. [ECF No. 10-19] 45-68; (4) the forensic interviewed who interviewed Perez's then-twelve-year-old niece and to whom the niece reported her years of sexual abuse by Perez, 4 R.R. [ECF No. 10-19] 71-99; and (5) the Sexual Abuse Nurse Examiner ("S.A.N.E.") who examined Perez's niece and recorded in her report the niece's reports of her abuse, 4 R.R. [ECF No. 10-19] 107-22.

[3] 5 R.R. [ECF No. 10-20] 17-18.  Copies of the jury's verdict form appear at pages 215-20 of ECF No. 10-14 and at pages 50-55 of EXF No. 10-25.

[4] The verbatim transcript from all proceedings during the punishment phase of Perez's trial appears at 5 R.R. [ECF No. 10-20] 21-56.  The prosecution presented no new evidence at the punishment phase of trial.  The defense presented testimony from Perez's mother, which focused on the fact Perez had been anally raped multiple times as a small child and later displayed depression and making multiple suicide attempts beginning when he was twelve.  5 R.R. 22-39.  Perez also testified outside the jury's presence that he did not wish to testify at the punishment phase of trial and he was satisfied with his attorney's performance.  5 R.R. [ECF No. 10-20] 41-42.

[5] 5 R.R. [ECF no. 10-20] 51-54.  Copies of the jury's punishment phase verdict form appear at page 233 of ECF no. 10-14 and at page 59 of ECF No. 10-25.

[6] Attorney Shelly Messerli filed Perez's appellant's brief on October 25, 2019, in the Texas Court of Appeals for Fort Worth.  A copy of Perez's state appellant's brief appears at ECF No. 10-5.

Court of Appeals concluded that (1) Perez alleged no facts suggesting either the Detective or other Police Officer who interviewed him engaged in any coercive conduct toward Perez, which rendered his due process challenge to his confession invalid; (2) the trial court did not abuse its discretion in concluding, despite Perez's statements to police that he was depressed and possibly suicidal, that his statements were voluntarily made because Perez was given proper *Miranda* warnings, appeared to understand his rights, and knowingly waived his rights; and (3) the trial court did not abuse its discretion in admitting evidence of Perez's acts of sexual abuse committed while Perez was a juvenile because such evidence was expressly admissible under Article 38.37 of the Texas Code of Criminal Procedure. *Perez*, 2020 WL 6788196, at \*2-\*6. On July 14, 2021, Perez filed a pro se petition for discretionary review in the Texas Court of Criminal Appeals ("TCCA") (ECF No. 10-12). The TCCA refused Perez's petition for discretionary review on September 15, 2021 (PDR 1243-20).

### E.  State Habeas Proceeding

Perez filed a pro se application for state habeas relief on November 29, 2022, asserting four claims of ineffective assistance by his trial counsel, to wit, arguments his trial counsel rendered ineffective assistance by (1) failing to argue that Perez's confessions were rendered involuntary due to the coercive nature of the complaining witness's threats to commit suicide if Perez failed to turn himself in and confess; (2) failing to assert that Perez was mentally incompetent during plea negotiations with the prosecution; (3) failing to question further on voir dire a venire member who had two family members who had been sexually abused for the purpose of making a possible challenge for cause or peremptory strike; and (4) making statements identifying himself as "the

State" and eliciting testimony from a witness which established elements of the prosecution's case.[7]

The State obtained and filed affidavits from each of Perez's trial counsel addressing his ineffective assistance claims, as well as proposed findings of fact, conclusions of law, and a recommendation that state habeas relief be denied.[8]  The Tarrant County Criminal Law Magistrate adopted the State's proposed findings, conclusions, and recommendation in an Order issued May 26, 2023 (ECF No. 10-25, at page 138).  The state district court adopted the Magistrate's Order on May 30, 2023 (ECF No. 10-25, at page 139).  The Texas Court of Criminal Appeals denied Perez's state habeas application without written order.  *Ex parte Perez*, WR-94,860-01 (Tex. Crim. App. July 5, 2023) (ECF No. 10-22, at pages 1-3).

### F.  Proceedings in this Court

Perez filed his pro se federal habeas corpus petition on July 20, 2023 (ECF No. 1), asserting the same four claims of ineffective assistance that he presented in his state habeas corpus application.  Respondent filed his Answer on November 16, 2023 (ECF No. 11).  Perez filed a Reply brief on December 12, 2023 (ECF No. 13).

### II.    STANDARD OF REVIEW

Because Perez filed this federal habeas corpus action after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), this Court's review of his claims for federal habeas corpus relief is governed by AEDPA.  *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

---

[7] Perez's pro se state habeas application appears at pages 15-33 of ECF No. 10-25.

[8] The affidavit of Perez's lead trial counsel, attorney Don Hase, appears at pages 113-20 of ECF No. 10-25. The affidavit of Perez's "second chair" or co-counsel at trial, attorney Martin Purselley, appears pages 108-10 of ECF No. 10-25.  The State's proposed findings, conclusions, and recommendation appears at pages 122-35 of ECF No. 10-25.

The legislative history of the AEDPA indicates that it was intended as a limitation upon the scope of federal habeas review, not as an enactment intended to broaden the scope of federal habeas review or to reconfigure federal habeas courts as super state appellate courts. One of the principle purposes of the AEDPA was to reduce delays in the execution of state and federal criminal sentences, especially capital sentences. *Ryan v. Valencia Gonzales*, 568 U.S. 57, 76 (2013); *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007); *Rhines v. Weber*, 544 U.S. 269, 276 (2005). Another purpose of the AEDPA was to encourage litigants to pursue claims in state court prior to seeking federal collateral review. *Duncan v. Walker*, 533 U.S. 167, 181 (2001); *see also Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (the AEDPA imposes the burden on a petitioner to litigate to the maximum extent possible, including fairly presenting all available evidence supporting, his claims in state court). The AEDPA was also intended to prevent piecemeal litigation and gamesmanship. *Maywood v. Patterson*, 561 U.S. 320, 334 (2010). Thus, under the AEDPA, federal habeas review of claims is limited to the record that was before the state court that adjudicated the prisoner's claims on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). "The AEDPA statute of limitations promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." *Day v. McDonough*, 547 U.S. 198, 205-06 (2006). Collectively, the provisions of the AEDPA further the principles of comity, finality, and federalism. *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007); *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Under the AEDPA standard of review, this Court cannot grant Perez federal habeas corpus relief in connection with any claim that was adjudicated on the merits in state court proceedings, unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Davenport*, 596 U.S. 118, 135-36 (2022); *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. § 2254(d).

The Supreme Court has concluded the "contrary to" and "unreasonable application" clauses of Title 28 U.S.C. § 2254(d)(1) have independent meanings. *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the "contrary to" clause, a federal habeas court may grant relief if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Brown*, 544 U.S. at 141; *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) ("A state court's decision is 'contrary to' our clearly established law if it 'applies a rule that contradicts the governing law set forth in our cases' or it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'"). A state court's failure to cite Supreme Court authority does not, per se, establish the state court's decision is "contrary to" clearly established federal law: "the state court need not even be aware of our precedents, 'so long as neither the reasoning nor the result of the state-court decisions contradicts them.'" *Mitchell*, 540 U.S. at 16.

Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Brown*, 544 U.S. at 141; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). A federal court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal

8

law was "objectively unreasonable." *McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) ("A federal habeas court can only set aside a state-court decision as 'an unreasonable application of . . . clearly established Federal law,' § 2254(d)(1), if the state court's application of that law is 'objectively unreasonable.'"); *Wiggins*, 539 U.S. at 520-21.  The focus of this inquiry is on whether the state court's application of clearly established federal law was objectively unreasonable; an "unreasonable" application is different from a merely "incorrect" one. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under the AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."); *Wiggins*, 539 U.S. at 520; *Price v. Vincent*, 538 U.S. 634, 641 (2003) ("[I]t is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner").  "Under the Antiterrorism and Effective Death Penalty Act, a state prisoner seeking a writ of habeas corpus from a federal court 'must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Bobby v. Dixon*, 565 U.S. 23, 24 (2011) (quoting *Harrington v. Richter,* 562 U.S. 86, 101 (2011)).

Legal principles are "clearly established" for purposes of AEDPA review when the holdings, as opposed to the dicta, of Supreme Court decisions existing at the time of the relevant state-court decision establish those principles. *Brown*, 596 U.S. at 136 ("It is not enough that the state court decision offends lower federal court precedents.  This Court's dicta cannot supply a ground for relief." (citation omitted)); *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) ("We look for 'the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision.'"); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

AEDPA also significantly restricts the scope of federal habeas review of state court fact findings.  Section 2254(d)(2) of Title 28, United States Code, provides federal habeas relief may not be granted on any claim that was adjudicated on the merits in the state courts unless the state court's adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Wood v. Allen*, 558 U.S. 290, 301(2010) ("[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."); *Williams v. Taylor*, 529 U.S. at 410 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.").  Even if reasonable minds reviewing the record might disagree about the factual finding in question (or the implicit credibility determination underlying the factual finding), on habeas review, this does not suffice to supersede the trial court's factual determination.  *Wood*, 558 U.S. at 301; *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).

In addition, § 2254(e)(1) provides that a federal habeas petitioner challenging state court factual findings must establish by clear and convincing evidence that the state court's findings were erroneous. *Schriro*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El v. Dretke,* 545 U.S. 231, 240 (2005) ("[W]e presume the Texas court's factual findings to be sound unless Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).  It remains unclear at this juncture whether § 2254(e)(1) applies in every case presenting a challenge to a state court's factual findings under § 2254(d)(2).  *See Wood*, 558 U.S. at 300-01 (choosing not

to resolve the issue of § 2254(e)(1)'s possible application to all challenges to a state court's factual findings); *Rice*, 546 U.S. at 339 (likewise refusing to resolve the Circuit split regarding the application of § 2254(e)(1)).

The deference to which state-court factual findings are entitled under AEDPA does not imply an abandonment or abdication of federal judicial review. *See Miller-El*, 545 U.S. at 240 (the standard is "demanding but not insatiable"); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief.").

Before a federal court may grant a state prisoner habeas corpus relief on a claim that was adjudicated on the merits in state court, the petitioner must not only satisfy the requirements of AEDPA but must also convince the court that the error committed by the state court during its adjudication of the petitioner's criminal case was not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Brown v. Davenport*, 596 U.S. 118, 122 (2022). In *Shinn v. Jenkins*, 596 U.S. 366, 378 (2022), the Supreme Court held that when a federal habeas petitioner has properly exhausted state court remedies on a federal constitutional claim through direct appeal or a state habeas corpus proceeding, federal habeas review of that claim is circumscribed in that the federal court is limited to reviewing the record before the state court that resolved the claim on the merits and the petitioner must establish that, under Supreme Court precedent, no fair-minded jurist could have reached the same result as the state court. *See also Shoop v. Twyford*, 596 U.S. 811, 819-20 (2022) (where a petitioner failed to develop the factual bases for his claims in state court, he is entitled to present new evidence in support of his claims before the federal habeas court only in the two limited circumstances outlined in Section 2254(e)(2)); *Shinn*, 596 U.S. at 371 (holding the same).

Absent a showing that there is an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of a petitioner, this Court is statutorily precluded from granting federal habeas corpus relief on any claim that has not been fairly presented to the state courts. *Davila v. Davis*, 582 U.S. 521, 527 (2017) (the exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first affording the state courts an opportunity to correct a constitutional violation); 28 U.S.C. § 2254(b)(1). Nonetheless, this Court is authorized to deny federal habeas relief on the merits notwithstanding a petitioner's failure to exhaust available state court remedies. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (a federal habeas court abuses its discretion if it grants a petitioner a stay when his unexhausted claims are plainly meritless); 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

If the state courts failed to adjudicate a claim on the merits that Perez now presents to this Court (such as claims (1) the state courts summarily dismissed under the Texas writ-abuse statute or Texas rules of procedural default or (2) which Perez failed to fairly present to the state courts), then this Court's review of the unadjudicated claim is de novo. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (de novo review of the allegedly deficient performance of petitioner's trial counsel was necessary because the state court failed to address the prejudice prong of *Strickland*); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005) (de novo review of the prejudice prong of *Strickland* was required where the state court rested its rejection of an ineffective assistance claim on the deficient performance prong and never addressed the issue of prejudice); *Wiggins*, 539 U.S. at 534 (same).

### III.    INEFFECTIVE ASSISTANCE CLAIMS

### A.  Overview of the Claims

In his federal habeas petition Perez Argues that his trial counsel rendered ineffective assistance by (1) failing to emphasize that Perez's confessions were rendered involuntary due to the coercive nature of the complaining witness's threats to commit suicide if Perez failed to turn himself in and confess; (2) failing to assert that Perez was mentally incompetent during plea negotiations with the prosecution; (3) failing to question further on voir dire a venire member who had two family members who had been sexually abused for the purpose of making a possible challenge for cause or peremptory strike; and (4) making statements identifying himself as "the State" and eliciting testimony from a witness which established elements of the prosecution's case.

### B.  State Court Disposition

Perez fairly presented the same four ineffective assistance complaints as his first through fourth claims in his state habeas application.  The TCCA rejected those claims on the merits when it *denied* Perez state habeas relief.  The state habeas trial court made express factual findings that (1) both of the affidavits submitted by Perez's trial counsel (attorneys Hase and Purselley) were credible; (2) there was no evidence the performance of Perez's trial counsel fell below an objective level of reasonableness; and (3) there was no evidence the outcome of Perez's trial would have been any different but for the alleged deficient performance of either of his trial counsel.[9]  The state habeas trial court also concluded that Perez had failed to prove either that (1) his trial counsel should have argued that Perez's confession was involuntary due to the suicidal threats of Perez's

---

[9] State Habeas Trial Court's findings, of fact, conclusions of law, and recommendation (henceforth "FFCL"), at ¶¶ 50-53, p. 9 (ECF no. 10-25, at p. 130).

niece; (2) he was not competent to engage in plea negotiations; (3) his trial counsel's voir dire of venire member (and later juror) Forbes was constitutionally deficient; (4) defense attorney Purselley's decision to question the victim and forensic interviewer regarding the location where the alleged abuse took place was reasonably intended to help establish that the crimes with which Perez was charged took place when he was still a juvenile and not an adult; (5) Perez failed to show there was a reasonable probability that (a) his confession could have been ruled involuntary based on the victim's suicidal threats, (b) the outcome of Perez's plea negotiations would have been different had Perez's trial counsel acted differently, (c) the outcome of Perez's trial would have been different had his trial counsel asked venire member Forbes additional voir dire questions; and (d) the outcome of Perez's trial would have been any different had attorney Purselley not asked Perez's victim and forensic interviewer about the location where some of the sexual abuse took place; and (6) Perez's ineffective assistance claims all failed to satisfy the prejudice prong of *Strickland*.[10]

### C.  Clearly Established Federal Law

Insofar as Perez relies upon the ABA's Guidelines as setting the appropriate standard for federal habeas review of a state trial counsel's performance, those recommendations for the performance of trial counsel do not set forth the operative standard of *judicial* review for the performance of trial counsel.  *Bobby v. Van Hook*, 558 U.S. 4, 8 (2009) (the ABA Guidelines are "only guides" to what reasonableness means, not its definition); *Druery v. Thaler*, 647 F.3d 535, 541 n.2 (5th Cir. 2011) ("Best practices urged by the ABA do not necessarily track the contours of the Sixth Amendment.  Consequently, the guidelines do not function as 'inexorable commands' with which all capital defense counsel 'must fully comply.'").

---

[10] FFCL, ¶¶ 8-13 & 15-21, pp. 11-12 (ECF No. 10-25, at pp. 132-33).

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions.

*Strickland v. Washington*, 466 U.S. 668, 688-89 (1984).

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in *Strickland*, 466 U.S. at 687:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of *Strickland*, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). In so doing, a convicted defendant has the burden of proof and must overcome a strong presumption that the conduct of his trial counsel "falls within [a] wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Bobby*, 558 U.S. at 7 (quoting *Strickland*, 466 U.S. at 688-89). Under the well-settled *Strickland* standard, the Supreme Court recognizes a strong presumption that counsel rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.  *See Wiggins*, 539 U.S. at 523; *Bell v. Cone*, 535 U.S. 685, 698 (2002); *Strickland*, 466 U.S. at 690.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objectively unreasonable misconduct of his counsel, the result of the proceeding would have been different.  *Wiggins*, 539 U.S. at 534; *Strickland*, 466 U.S. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding.  *Thornell v. Jones*, 602 U.S. 154, 163-64 (2024) (quoting *Pinholster*, 563 U.S. at 189; *Strickland*, 466 U.S. at 694.  "This requires a substantial, not just conceivable, likelihood of a different result."  *Jones*, 602 U.S. at 163; *Pinholster*, 563 U.S. at 189.  This standard does not require a defendant to show that it is more likely than not that adequate representation would have led to a better result, but "[t]he difference" should matter "only in the rarest case."  *Jones*, 602 U.S. at 163-64 (quoting *Strickland*, 466 U.S. at 697).  To determine whether a prisoner satisfies this standard, a court must "consider the totality of the evidence before the judge or jury"—both mitigating and aggravating.  *Jones*, 602 U.S. at 164 (quoting *Strickland*, 466 U.S. at 695).

In instances in which the state courts failed to adjudicate either prong of the *Strickland* test (such as those complaints the state courts summarily dismissed under the Texas writ-abuse statute or which the petitioner failed to fairly present to the state courts), this Court's review of the un-adjudicated prong is de novo.  *See Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U. S. 374, 390 (2005).

Under the AEDPA's deferential standard of review, claims of ineffective assistance adjudicated on the merits by a state court are entitled to a doubly deferential form of federal habeas review.  The AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been

adjudicated in state court." *Burt v. Titlow,* 571 U.S. 12, 19 (2013).  Under 28 U.S.C. § 2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Wheeler,* 577 U.S. 73, 77 (2015) (quoting *White v. Woodall,* 572 U.S. 415, 419-20 (2014)); *Harrington v. Richter,* 562 U. S. 86, 103 (2011).

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision.  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.   "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."

*Harrington*, 562 U. S. at 101 (Citations omitted).

## D.  AEDPA Review

Because the TCCA rejected all of Perez's ineffective assistance claims on the merits in the course of his state habeas proceeding, the highly deferential AEDPA standard of review applies to all of his ineffective assistance claims herein.

### 1.  Failing to Assert the Victim's Suicidal Threats Rendered Perez's Confession Involuntary

#### a.  The Complaint

Perez argues in his first ground for federal habeas relief that his trial counsel should have emphasized the fact that the complaining witness, Perez's niece, threatened to commit suicide unless Perez turned himself in and confessed that he had sexually abused her for many years,  He contends his trial court erred in emphasizing, instead, that Perez was suffering from a mental illness (depression) at the time Perez made his confessions to police.

#### b.  State Court Findings and Conclusions

On direct appeal, the Texas Court of Appeals pointed out in a footnote in its opinion affirming Perez's conviction and sentence that because Perez alleged no coercive misconduct on the part of any law enforcement officer in regard to Perez's confessions, Perez had no arguable constitutional due process complaint arising from the fact his niece, i.e., his victim, had threatened to harm herself unless Perez turned himself in and confessed to what he had done.  *Perez*, 2020 WL 6788196, *6 n.6 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)).

The state habeas court made findings of fact and conclusions of law in the course of Perez's state habeas corpus proceeding that there was nothing objectively unreasonable, or "prejudicial" within the meaning of *Strickland*, about his trial counsels' failure to argue that Perez's confession was rendered involuntary because it was the result of Perez's victim threatening to kill herself.[11]

---

[11] FFCL, ¶¶ 27-28 & ¶¶ 52-52, pp. 7 & 9 [ECF No. 1025, at pp. 128 & 130] and ¶¶ 8 & 15, p. 11 [ECF No. 10-25, at p. 132].

### c.  Analysis

Both the Texas Court of Appeals in its opinion affirming Perez's conviction and sentence and the state habeas trial court in its conclusions of law in Perez's state habeas proceeding correctly concluded that Perez's complaint that his confession was rendered involuntary by his victim's threat to commit suicide was constitutionally invalid.  Thus, the premise underlying this ineffective assistance claim is fallacious and without arguable merit.

Due process precludes admission of a confession where a defendant's will is overborne by the circumstances of the interrogation. *See Schneckloth v. Bustamante*, 412 U.S. 218, 226 (1973). Custodial police interrogation entails inherently compelling pressures and coercive aspects. *See J.D.B. v. North Carolina*, 564 U.S. 261, 268-70 (2011); *Dickerson v. United States*, 530 U.S. 428, 435 (2000) ("police interrogation, by its very nature, isolates and pressures the individual"); *Miranda v. Arizona*, 384 U.S. 436, 439 (1966) (holding the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements and heightens the risk that an individual will not be accorded his privilege against self-incrimination).

But, absent coercive police conduct causally related to a defendant's confession, there is no basis for concluding that any *state actor* has deprived a criminal defendant of due process of law. *See Colorado v. Connelly*, 479 U.S. 157, 164 (1986). A defendant's mental condition, by itself and apart from its relation to official coercion, does not dispose of the inquiry into constitutional voluntariness.  *See id.*  And the record here contains no fact-specific allegation, much less any evidence, establishing that any *state agent* applied any coercive device, tactic, or maneuver to compel Perez to consent against his will to be interviewed by either Detective Tenorio or officer Vasquez.  Perez did not allege any facts, and furnished the state courts with no evidence,

showing that his victim's threats to harm herself were made at the behest of, or in conjunction with, any effort by a *state actor* to compel Perez to confess.

It is well-settled in this Circuit that a failure to make a futile or meritless objection or motion or the failure to raise a meritless claim cannot form the basis for a finding of deficient performance under *Strickland*. *See Guidry v. Lumpkin*, 2 F.4th 472, 491 (5th Cir. 2021) (defense counsel cannot be ineffective for failure to raise a meritless claim), *cert. denied*, 143 S. Ct. 1212 (2022); *Evans v. Davis*, 875 F.3d 210, 219 (5th Cir. 2017) ("Obviously, counsel is not deficient for failing to make meritless suppression motions."); *Segundo v. Davis*, 831 F.3d 345, 350-51 (5th Cir. 2016) (counsel not ineffective for filing to raise a meritless claim); *Reed v. Stephens*, 739 F.3d 753, 778 (5th Cir. 2014) (failure to assert a meritless objection is not grounds for deficient performance (citing *Clark v. Thaler*, 673 F.3d 410, 427 (5th Cir. 2012)); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) (failure to lodge futile objections does not qualify as ineffective assistance).

Perez's contention that his confessions were rendered involuntary by virtue of his victim's threats to kill herself is without arguable merit. There was nothing objectively unreasonable with the decision by Perez's trial counsel not to make a futile, meritless, legal argument. The state habeas court reasonably concluded this ineffective assistance claim failed to satisfy the deficient performance prong of *Strickland*.

Likewise, the state habeas court reasonably concluded this ineffective assistance complaint failed to satisfy the prejudice prong of *Strickland*. *See Young v. Davis*, 835 F.3d 520, 528 n.36 (5th Cir. 2016) (failure to raise a meritless claim did not prejudice defendant within the meaning of *Strickland*); *Garza v. Stephens*, 738 F.3d 559, 677 (5th Cir. 2013) (failure to attempt to introduce inadmissible evidence did not prejudice the defendant); *Paredes v. Quarterman*, 574 F.3d 281,

291 (5th Cir. 2009) (failure to make a meritless objection did not prejudice defendant); *United States v. Kimler*, 167 F.3d 889, 873 (5th Cir. 1999) (failure to raise a meritless argument was not prejudicial because the outcome of the proceeding would not have been different had the attorney raised the issue); *Teague v. Scott*, 60 F.3d 1167, 1174 (5th Cir. 1995) (state appellate counsel's failure to raise a claim on direct appeal that lacked merit did not prejudice the defendant under *Strickland*); *Smith v. Puckett*, 907 F.2d 581, 585 (5th Cir. 1990) (failure to challenge identification procedure did not prejudice defendant where there was no evidence the identification procedure was suggestive).

For the foregoing reasons, the state habeas court's denial on the merits of Perez's first claim herein (which corresponds with his first claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Perez's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Perez's first claim herein does not warrant federal habeas corpus relief.

### 2. Failing to Assert Perez was Mentally Incompetent During Plea Negotiations

#### a. The Complaint

In his second ineffective assistance claim herein, Perez argues that his trial counsel should have argued that Perez was not mentally competent throughout the time frame in which Perez refused to accept the prosecution's settlement offers.

#### b. State Court Findings and Conclusions

As explained in Section I.A. above, the Texas Court of Appeals reviewed the record from Perez's trial court proceedings and concluded that (1) two months after he gave his confession,

Perez was evaluated and found to be competent to stand trial despite his depression; (2) a month later, Dr. Norman concluded Perez was incompetent to stand trial; (3) a year later, the mental health professionals at the facility where Perez had been committed reported Perez was still incompetent to stand trial; (4) a month or so later, however, the trial court determined Perez was competent to stand trial; and (5) Perez did not stand trial for almost another year, i.e., in April 2019. *Perez*, 2020 WL 6788196, *2.

Perez's trial counsel (i.e., attorneys Hase and Purselley) furnished the state habeas court with affidavits. Attorney Hase stated in his affidavit, in pertinent part, that (1) Perez was fully able to communicate with attorney Hase on May 30, 2018, less than 30 days after Perez had been declared competent by a mental health professional; (2) attorney Hase met with Perez multiple times in June 2018 to discuss the prosecution's plea offer and, later the same month, wrote Perez a letter further elaborating on the plea offer; (3) attorney Hase met with Perez multiple times in July 2018 and again in August, September, and October 2018, during which Perez was able to discuss his case; (4) during an October 8, 2018 meeting between attorney Hase and Perez in the courtroom, Perez reviewed the forensic interview of the victim; (5) during an October 16, 2018 meeting between attorney Hase and Perez, Perez instructed Hase to make the prosecution a counter-offer regarding the plea bargain offer Hase had previously discussed with Perez; (6) later the same day Perez communicated to Hase that he wanted to change his plea to not guilty by reason of insanity; (7) Hase then requested and obtained a new mental health evaluation from a court-appointed defense expert; (8) the court-appointed psychologist reported to Hase that Perez did not meet the legal definition of insanity at the time of his offense; (9) Hase continued to discuss the case with Perez, meeting multiple times in November 2018, including discussing Perez's desire to plead to a ten-year sentence; (10) in December 2018, Perez requested and obtained a meeting with

22

the trial judge, who explained to Perez that double jeopardy principles did not apply to the charges against Perez; (11) Perez then suggested to the trial judge that he might waive a jury trial but the prosecution explained that the prosecution would not waive a jury trial; (12) Perez rejected the prosecution's offer of a thirty-year sentence; and (13) attorney Purselley, a former prosecutor, joined the defense team in February 2019.[12] In his affidavit, attorney Purselley stated, in part, that Perez "was attentive and engaged in his defense and provided his input at various times during the trial."[13]

The state habeas trial court expressly found that Perez had failed to present any evidence to support his claim that he did not have the ability to make a rational and informed decision to accept a plea after he was found competent to stand trial.[14] The state habeas trial court concluded that (1) Perez failed to prove he was not competent during the plea bargain process; (2) Perez failed to show that his trial counsels' representation fell below an objective standard of reasonableness; and (3) Perez failed to show there is a reasonable likelihood that the result of his trial would have been different had counsel acted differently during the plea bargain process.[15]

### c.  Analysis

Having reviewed the entirety of the state court records from Perez's trial, direct appeal, and state habeas corpus proceedings, this Court concludes the state habeas court's factual finding that Perez presented no evidence showing that he was mentally incompetent during plea negotiations is fully supported by the record before that court, specifically the the affidavit of attorney

---

[12] Hase affidavit at pp. 2-6 [ECF No. 10-25, at pp. 114-19].

[13] Purselley affidavit, at p. 2 [ECF No. 10-25, at p. 109].

[14] FFCL, ¶ 30, p. 7 [ECF No. 10-25, p. 128].

[15] FFCL, ¶¶ 9, 13, 16, 21, pp. 11-12 [ECF No. 10-25, pp. 132-33].

Hase. Perez offered the state habeas court no specific facts, much less any evidence, showing that he was mentally incompetent during the many months of 2018 during which the parties attempted unsuccessfully to negotiate a plea bargain. Attorney Hase's affidavit detailed months of conferences with Perez. Nothing in that affidavit suggested Perez was in any way unable to fully comprehend and respond to the plea bargains offered by the prosecution. On the contrary, attorney Hase described Perez as making a counteroffer to the prosecution, raising a possible a double jeopardy claim, and suggesting the possibility of waiving a jury trial. Perez does not attempt to contradict or refute the factual accuracy of attorney Hase's description of Perez's actions during the plea negotiations. Perez's behavior, as described by attorney Hase, fully supported the state habeas court's finding that Perez failed to present any controverting evidence to that court on this point.

Simply put, Perez fails to allege any specific facts in his pleadings in this Court which cast any doubt on his mental competency during the plea bargain process. Perez's conclusory assertion that he was not competent during the plea bargain process is refuted by the highly detailed account of those negotiations contained in attorney Hase's affidavit. Conclusory assertions of ineffective assistance will not support a claim of ineffective assistance of counsel.

Rule 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts requires that the petition "state the facts supporting each ground." This is very different from the "notice pleading" requirement of Rule 8, FED. R. CIV. P. *See Murphy v. Dretke*, 416 F.3d 427, 436-38 (5th Cir. 2005) (holding generic reference to individual voir dire of entire jury venire insufficient to support a *Batson* claim (citing *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (conclusory allegations fail to establish a valid claim of ineffective assistance of counsel)); and *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (conclusory allegations do not raise a

24

constitutional issue in a habeas proceeding)).  The Fifth Circuit has reaffirmed this rule in a wide variety of contexts.  *See, e.g., Fahle v. Cornyn*, 231 F.3d 193, 196-97 (5th Cir. 2000) (conclusory due process allegations that petitioner was denied the presumption of innocence insufficient to support claims for federal habeas relief); *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998) (conclusory assertions regarding alleged destruction of exculpatory evidence failed to show State destroyed the evidence in bad faith, i.e., with knowledge of its exculpatory value); *Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) ("A habeas petitioner must make specific allegations; 'conclusory allegations unsupported by specific facts' or 'contentions that in the face of the record are wholly incredible' will not entitle one to discovery or a hearing." (quoting *Blackledge v. Allison*. 431 U.S. 63, 74 (1977)).

It is well-settled in this Circuit that conclusory allegations will not support a claim of ineffective assistance of counsel.  *See Harper v. Lumpkin*, 64 F.4th 684, 691-92 (5th Cir. 2023); *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007); *Collier v. Cockrell*, 300 F.3d 577, 587 (5th Cir. 2002); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Barnard v. Collins*, 958 F.2d 634, 642 n.11 (5th Cir. 1992).

Perez has failed to present this Court with any fact specific allegations, much less clear and convincing evidence, showing the state habeas court's factual finding was erroneous.  Thus, under Section 2254(e)(1), that finding binds this federal habeas court.  *Schriro*, 550 U.S. at 473-74 ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'"); *Rice*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'"); *Miller-El*, 545 U.S. at 240 ("[W]e presume the Texas court's factual findings to be sound unless

Miller-El rebuts the 'presumption of correctness by clear and convincing evidence.'"); 28 U.S.C. §2254(e)(1).

As explained above, the failure of a trial counsel to make a meritless argument is neither deficient performance nor prejudicial within the meaning of *Strickland*. *Guidry*, 2 F.4th at 491 (5th Cir. 2021) (defense counsel cannot be ineffective for failure to raise a meritless claim); *Young*, 835 F.3d at 528 n.36 (failure to raise a meritless claim did not prejudice defendant within the meaning of *Strickland*). Under such circumstances, the state habeas court reasonably concluded that Perez's second ineffective assistance claim failed to satisfy either prong of *Strickland*.

For the foregoing reasons, the state habeas court's denial on the merits of Perez's second claim herein (which corresponds with his second claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Perez's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Perez's second claim herein does not warrant federal habeas corpus relief.

### 3. Failing to Question Further on Voir Dire, Challenge for Cause, or Peremptorily Strike Venire Member Forbes

#### a. The Complaint

In his third ineffective assistance claim herein, Perez argues that because venire member Forbes disclosed during voir dire that she had two sisters who had been sexually abused, his trial counsel should have either questioned venire member Forbes further during voir dire (with an eye toward making a challenge for cause) or used a peremptory strike against this venire member.

### b. State Court Findings and Conclusions

In his affidavit, in pertinent part, attorney Hase stated that (1) he and co-counsel Purselley reviewed the juror questionnaires filled out by the venire members with Perez; (2) Perez also was present and heard the voir dire questioning of the venire members; (3) he and Purselley conferred with Perez regarding the defense's peremptory challenges; (4) Perez never requested that venire member Forbes be stricken peremptorily; and (5) venire member Forbes gave multiple questionnaire answers which Hase believed made her a potentially favorable juror, including the fact she ranked rehabilitation first among the goals of the criminal justice system and she indicated that she would evaluate the credibility of a child witness under the same standard as that of an adult witness.[16]

The state habeas trial court made express factual findings that (1) venire member Forbes indicated that she strongly believed in the presumption of innocence; (2) venire member Forbes indicated that two of her older sisters had been sexually abused but she had no knowledge of same at the time; (3) venire member Forbes indicated that she believed rehabilitation was the primary goal of the criminal justice system and that she would give a child's testimony the same weight as that of an adult; (4) Perez never indicated to his defense counsel that he wanted venire member Forbes stricken peremptorily; (5) there was no credible evidence that further question of venire member Forbes would have demonstrated that she was subject to a challenge for cause; and (6) there was no credible evidence that defense counsels' decision not to use a peremptory challenge against venire member Forbes was deficient performance.[17]  The state habeas trial court concluded (1) Perez failed to prove that his counsel's voir dire of venire member Forbes constituted deficient

---

[16] ECF no. 10-25, at pp, 116-17.

[17] FFCL, ¶¶ 31-39, pp. 6-7 [ECF no. 10-25, at pp. 127-28].

performance; and (2) Perez failed to prove there was a reasonable probability of a different result
to his trial had his trial counsel either asked venire member Forbes additional questions during voir
dire or used a peremptory challenge on venire member Forbes.[18]

### c.   Analysis

Perez failed to present the state habeas court with an affidavit or any other evidence
controverting the factual accuracy of the affidavit of attorney Hase.   Likewise, Prez failed to
present the state habeas court with any specific facts showing that the decisions by Perez's defense
counsel not to question venire member Forbes further during voir dire, not to challenge venire
member Forbes for cause, and not to employ a peremptory challenge against venire member Forbes
caused the performance of said counsel to fall outside the broad range of objectively reasonable
trial strategy.   This Court finds no clear and convincing evidence currently exists in the record
which casts any doubt on the accuracy of the state habeas court's factual findings.

The selection of a jury is more of an art than a science. *Romero v. Lynaugh*, 884 F.2d 871,
878 (5th Cir. 1989) (recognizing that "the selection of a jury is, inevitably, a call upon experience
and intuition" where trial counsel "must draw upon his own insight and empathic abilities"). A
trial counsel's actions during voir dire are considered to be a matter of trial strategy; such decisions
cannot be the basis for an IAC claim unless trial counsel's tactics are shown to be so ill-chosen
that they permeate the entire trial with obvious unfairness.  *Teague v. Scott*, 60 F.3d 1167, 1172
(5th Cir. 1995). As for the bias of a prospective juror, such does not constitutionally disqualify
him or her from sitting on a case "if the juror can lay aside his impression or opinion and render a
verdict based on the evidence presented in court." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961).  As
explained below, Perez has not alleged any specific facts which demonstrate venire member

---

[18] FFCL, ¶¶ 10, 17 & 18, pp. 11-12 [ECF no. 10-25, at pp. 132-33].

Forbes possessed constitutionally disqualifying bias.  Nor has Perez alleged any specific facts showing that the existence of disqualifying bias could have been disclosed through additional voir dire questioning of venire member Forbes.  As explained above, conclusory assertions will not support a finding of ineffective assistance.  *See Harper*, 64 F.4th at 691-92; *Demik*, 489 F.3d at 646; *Collier*, 300 F.3d at 587; *Miller*, 200 F.3d at 282; *Barnard*, 958 F.2d at 642 n.11.

Perez's trial counsel listed objectively reasonable reasons (i.e., her juror questionnaire and voir dire answers) for believing that venire member Forbes could be favorably disposed toward the defense, thus making her a potentially better choice for a juror than other members of the jury venire.

Perez's naked assertion that venire member Forbes was constitutionally disqualified as biased is meritless.  At no point during their voir dire examination did Forbes that she was unable to set aside their personal relationships with family members who had been sexually abused and render a verdict based solely on the evidence presented at trial and the law as instructed by the trial court.  This is all the Constitution requires from potential jurors.  *Irvin*, 366 U.S. at 722.  Under such circumstances, the TCCA could reasonably have concluded during Perez's state habeas proceeding that there was nothing objectively unreasonable with the decision by Perez's trial counsel not to raise a challenge for cause to, or peremptorily strike, venire member Forbes.  The TCCA could also have reasonably concluded Perez was not prejudiced within the meaning of *Strickland* by his trial counsel's failure to challenge venire member Forbes for cause, questions Forbes more about her sisters' experiences, or failing to exercise a peremptory challenge against Forbes.  As explained above in Section I, the evidence of Perez's guilt was overwhelming.  Perez furnished the jury in his own words with overwhelming evidence of the essential elements of the offenses with which he had been charged.

Insofar as Perez suggests that venire member Forbes was implicitly biased against him, Perez misperceives the standard for evaluating a potential juror for bias and for disqualification of a venire member for cause.  Likewise, insofar as Perez contends that he was entitled to a jury venire or jury that was totally ignorant of the facts of his case prior to trial and totally unfamiliar with any person who had ever been the victim of child sexual abuse, he is in error.  Pretrial ignorance of the facts of a case by jurors is not the standard for determining whether a defendant has been afforded his constitutional right to an impartial jury.  *See Tsarnaev v. United States*, 142 S. Ct. 1024, 1034 (2022) ("The right to an 'impartial' jury 'does not require *ignorance.*'" (citing *Skilling v. United States*, 561 U.S. 358, 381 (2010)).  Notorious crimes are, almost as a matter of necessity, brought to the attention of those informed citizens who are best fitted for jury duty. *Tsarnaev*, 142 S. Ct. at 1034 (citing *Reynolds v. United States*, 98 U.S. 145, 155-56 (1879)).  A trial court protects the defendant's Sixth Amendment right to an impartial jury by ensuring that jurors have no bias or prejudice that would prevent them from returning a verdict according to the law and evidence.  *Tsarnaev*, 142 S. Ct. at 1034 (citing *Connors v. United States*, 158 U.S. 408, 413 (1895)).

Perez obliquely argues this Court should *imply* the existence of disqualifying bias because of Forbes's familial relationships with two persons who had been the victims of sexual abuse.  The Fifth Circuit, which adopted a rule regarding implicit bias in *Brooks v. Dretke*, 444 F.3d 328, 331 (5th Cir. 2006), has explained its doctrine of implied bias as follows:

> Implied bias . . .  exists when "no reasonable person could not be affected in his actions as a juror." *Brooks*, 444 F.3d at 331. In these extreme situations, "the Constitution refuses to accept any assurances to the contrary." *Id.* In other words, "[w]here a juror has a close connection to the circumstances at hand ... bias may be presumed as a matter of law." *Buckner*, 945 F.3d at 910 (citing *Brooks*, 444 F.3d at 330).
>
> *Smith v. Phillips* is the leading Supreme Court case considering a claim of implied juror bias. 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982); *see also*

*Remmer v. United States*, 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435 (1956); *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954). The Court in *Smith* declined to presume bias as a matter of law when a juror in a murder trial applied for a job in the district attorney's office, a fact not disclosed until after the conviction. *Smith*, 455 U.S. at 213, 221, 102 S.Ct. 940. In a concurring opinion, Justice O'Connor clarified that despite the Court's holding, there are "some extreme situations that would justify a finding of implied bias" and outlined three such examples:

> ... a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.

*Id.* at 222 (O'Connor, J., concurring). When considering claims of implied juror bias, this court routinely looks to the examples in Justice O'Connor's concurrence. *E.g., Buckner*, 945 F.3d at 912–14; *Uranga v. Davis*, 893 F.3d 282, 288–89 (5th Cir. 2018); *Morales v. Thaler*, 714 F.3d 295, 299 (5th Cir. 2013); *Brooks*, 444 F.3d at 30-31; *Solis v. Cockrell*, 342 F.3d 392, 396 (5th Cir. 2003); *Andrews v. Collins*, 21 F.3d 612, 620 (5th Cir. 1994); *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988).

*Craaybeek v. Lumpkin*, 855 F. App'x 943, 946-47 (5th Cir. June 17, 2021).

Like the juror in *Craaybeek* whom the Fifth Circuit determined was *not* subject to the implied bias doctrine (the juror in that case was a former law enforcement officer), Forbes was not employed by the prosecuting agency; Forbes did not have a close relative who was a participant in Perez's trial or involved in the criminal transaction; and Forbes was not a witness or otherwise involved in the criminal transaction. The juror found to be implicitly biased in *Brooks* was arrested for carrying a handgun into the courthouse on the first day of the punishment phase of Brooks' capital murder trial. Perez alleges no facts showing that at the time of Perez's trial Forbes was subject to the same or similar legal proceedings as the juror in *Brooks*.[19] Thus, the Fifth Circuit's doctrine of implied bias has no application to Forbes.

---

[19] In *Brooks*, a Bexar County jury convicted the defendant of capital murder for his role in a robbery/fatal shooting in the course of an illicit marijuana sale. More specifically, during a weekend recess at the conclusion of the guilt-innocence phase of Brooks' trial, the state trial court allowed jurors to return to their homes. One of the jurors was a traveling salesman who spent that weekend traveling his route through South Texas. He carried a handgun with him for personal security reasons and kept it in a valise in which he kept business-related documents. The juror later testified he forgot to remove his handgun, which he had in his valise, when he returned home on Sunday. The following Monday morning, when the juror brought the valise with him into the courthouse, he was detained by

A trial judge's appraisal of potential bias among prospective jurors is entitled to considerable deference because it is influenced by a host of factors impossible to capture fully in the record, such as the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty. *See Tsarnaev*, 142 S. Ct. at 1034 (citing *Skilling*, 561 U.S. at 386). Logically, the same deference is due a trial counsel's subjective evaluation of the demeanor of potential jurors. *Romero*, 884 F.2d at 878 (recognizing that "the selection of a jury is, inevitably, a call upon experience and intuition" where trial counsel "must draw upon his own insight and empathic abilities"). Perez does not allege any specific facts which establish that the conduct of his trial counsel during jury selection was objectively unreasonable.

Perez has failed to overcome the presumption that the strategic decisions of trial counsel during jury selection fell outside the broad range of objectively reasonable legal representation. Forbes gave juror questionnaire answers and voir dire answers from which Perez's trial counsel could reasonably have believed Forbes would be favorably disposed toward the defense, or at least more favorably disposed toward the defense than some of the other venire members.

The TCCA could reasonably have concluded during Perez's state habeas proceeding that this ineffective assistance claim failed to satisfy either prong of *Strickland*. Accordingly, the TCCA's rejection on the merits of Forbes's third claim herein (which corresponds with his third claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

courthouse security and arrested for bringing a weapon into the courthouse. After a hearing outside the presence of the remaining jurors, the state trial court allowed the punishment phase of Brooks' capital murder trial to continue with the juror remaining on the jury. The Fifth Circuit held that this scenario created a situation in which bias favorable to the prosecution had to be implied. The Fifth Circuit vacated Brooks' death sentence, holding the prosecution's power over the juror presented an intolerable risk to Brooks' right to an impartial jury. *Brooks*, 444 F.3d at 331. Perez alleges no specific facts which indicate venire member Forbes was subject to prosecution for any criminal offense at the time of Perez's trial.

States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Perez's trial, state direct appeal, and state habeas proceedings. Under the AEDPA, Perez's third claim herein does not warrant federal habeas corpus relief.

### 4.  Questioning the Victim Re the Location of the Offense

#### a.  The Complaint

In his fourth and final ineffective assistance complaint, Perez argues that his trial co-counsel rendered ineffective assistance by questioning the complaining witness and forensic interviewer about the location of some of the acts of sexual abuse detailed in their direct testimony. Perez argues this line of questions actually helped the prosecution prove its case against Pere.

#### b.  State Court Findings and Conclusions

In his affidavit submitted to the state habeas court, attorney Purselley explained in detail that (1) while he accidentally referred to himself as "the State" at several points during Perez's trial, those misstatements (a) were unintentional, (b) reflected the fact that he had long been a prosecutor and had only recently begun handling defense work, (c) consistently produced chuckles from everyone else in the courtroom, and (d) did not in any way result in any confusion about which party he represented at Perez's trial; (2) one of the defense's theories at Perez's trial was that all of the acts the complaining witness and forensic interviewer described to the jury took place when Perez was still a juvenile; (3) his questions to both the complaining witness and forensic interviewer about the locations of many of the acts described by the complaining witness were intended to elicit information supporting the defense's theory that Perez's acts of sexual abuse took place when he was still a juvenile and, therefore, could not support the adult charges against Perez; and (4) his questions about the locations of various acts was consistent with the defense's theory of the case and dovetailed with the fact the defense was able to request and obtain

trial court jury instructions directing the jury to disregard any actions of the defendant which took place while the defendant was still a juvenile.[20]

The state habeas trial court expressly found that (1) attorney Purselley asked questions about whether certain acts took place at the victim's grandmother's residence because any such acts would have arguably taken place while Perez was a juvenile; (2) it was, therefore, a reasonable trial strategy to ask the victim and forensic interviewer for the location of certain acts by Perez; (3) Purselley's accidental references to himself as "the State" had no effect on the outcome of the trial because everyone knew Purselley was representing Perez at trial; (4) Purselley's affidavit was credible, as was attorney Hase's affidavit; and (5) there was no evidence the outcome of Perez's trial would have been different but for the alleged misconduct of his trial counsel.[21]  The state habeas trial court concluded that Perez's complaints about the performance of his trial counsel failed to satisfy either prong of *Strickland*.[22]

### c.  Analysis

The evidence of Perez's guilt was overwhelming.  As explained above, his written and recorded oral confessions proved the prosecution's case for it.  The complaining witness and forensic examiner gave trial testimony that confirmed Perez's confessions.

The efforts of Perez's trial co-counsel to obtain testimony on cross-examination which showed that some of the misconduct alleged against Perez had occurred at the residence of the victim's grandmother was an objectively reasonable attempt by defense counsel to convince the jury to disregard at least some of the specific instances of sexual misconduct alleged against Perez.

---

[20] ECF No. 10-25, at p. 109.

[21] FFCL ¶¶41-53, at pp. 8-9 [ECF No. 10-25, pp. 129-30].

[22] FFCL, ¶¶ 11-21, pp. 12-12 [ECF No. 10-25, at pp. 132-33].

As such, the state habeas court could reasonably have believed that the cross-examination questioning of the complaining witness and forensic examiner by defense attorney Purselley was an objectively reasonable part of a reasonable trial strategy.  Likewise, the state habeas trial court could reasonably have concluded that none of Perez's complaints in his fourth ineffective assistance claim for state (and federal) habeas relief satisfied the prejudice prong of *Strickland*.

The TCCA could reasonably have concluded during Perez's state habeas proceeding that this ineffective assistance claim failed to satisfy either prong of *Strickland*.  Accordingly, the TCCA's rejection on the merits of Forbes's fourth and final claim herein (which corresponds with his fourth and final claim in his state habeas application) was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in Perez's trial, state direct appeal, and state habeas proceedings.  Under the AEDPA, Perez's fourth claim herein does not warrant federal habeas corpus relief.

### E.  Alternatively, No Relief Under *De Novo* Review

Alternatively, out of an abundance of caution, this Court has undertaken *de novo* review of all of Perez's ineffective assistance claims and concludes none of those claims satisfy the prejudice prong of *Strickland*.  Perez's trial counsel ably obtained instructions directing the jury to disregard any evidence of Perez's sexual abuse of his niece that took place prior to Perez reaching adulthood.  Still the evidence of Perez's guilt was overwhelming.  His own confessions proved the prosecution's case.  When evidence of guilt is overwhelming, there is usually no legitimate basis for a finding of prejudice under *Strickland*.  *See Jones*, 602 U.S. at 165 (where the aggravating factors greatly outweigh the mitigating evidence, there may be no reasonable probability of a

different result); *Harper*, 64 F.4th at 699 (overwhelming evidence made it unlikely erroneous admission of expert testimony was prejudicial within the meaning of *Strickland*). Even under a *de novo* standard, none of Perez's ineffective assistance claims warrant federal habeas relief.

## IV. REQUEST FOR A FEDERAL EVIDENTIARY HEARING

Perez requests that this Court afford him an evidentiary hearing where he can present new evidence in support of his claims for federal habeas relief. Insofar as Perez's claims in this federal habeas corpus proceeding were disposed of on the merits during the course of his direct appeal or state habeas corpus proceedings, he is not entitled to a federal evidentiary hearing to develop new evidence attacking the state appellate or state habeas court's resolution of his claims unless he can satisfy 28 U.S.C. § 2254(e)(2). *Shinn v. Ramirez*, 596 U.S. 366, 371-72 (2022) (in all but the extraordinary situations listed in § 2254(e)(2), a federal habeas petitioner who failed to develop facts in state court supporting his claim is not entitled to an evidentiary hearing in federal court). Likewise, a federal habeas petitioner is not entitled to an evidentiary hearing for the purpose of showing that his failure to develop facts in the state court was the result of the ineffective assistance of his state habeas counsel. *Id.*, 596 U.S. at 381-91.

Under AEDPA, the proper place for development of the facts supporting a federal habeas claim is the state court. *See Harrington*, 562 U. S. at 103 ("Section 2254(d) thus complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding."); *Hernandez v. Johnson*, 108 F.3d 554, 558 n.4 (5th Cir. 1997) (holding AEDPA clearly places the burden on a federal habeas petitioner to raise and litigate as fully as possible his federal claims in state court). Where a petitioner's claims have been rejected on the merits, further factual development in federal

court is effectively precluded by virtue of the Supreme Court's holding in *Cullen v. Pinholster*, 563 U. S. 170, 181-82 (2011):

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court.

Thus, Perez is not entitled to a federal evidentiary hearing on any of his claims which were rejected on the merits by the state courts, either on direct appeal or during his state habeas corpus proceedings. *Shinn*, 596 U.S. at 371; *Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." (quoting *Cullen*, 563 U.S. at 185)). Furthermore, factual development of a claim in federal court is permissible only when the federal habeas court first determines the new evidence to be developed could properly be considered in light of the restrictions on evidentiary development imposed by the AEDPA. *Shoop v. Twyford*, 596 U.S. 811, 819-21 (2022).

With regard to any new factual allegations, new evidence, or new legal arguments Perez presents in support of any of the claims for which this Court has undertaken *de novo* review, he is likewise not entitled to an evidentiary hearing. In the course of conducting *de novo* review of Perez's claims, except for those assertions that are refuted by the state courts records now before this Court, this Court has assumed the factual accuracy of (1) all the specific facts alleged by Perez in support of his claims for relief and (2) any documents he has presented in support of those claims. Even when the truth of all of Perez's new factual allegations supporting those claims is assumed, his claims do not warrant federal habeas relief. *See Schriro v. Landrigan*, 550 U. S. 465,

474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.").  Thus, Perez is not entitled to an evidentiary hearing in this Court with regard to any of his claims for which this Court has undertaken *de novo* review.

## V. CERTIFICATE OF APPEALABILITY

Under AEDPA, before a petitioner may appeal the denial of a habeas corpus petition filed under § 2254, the petitioner must obtain a Certificate of Appealability ("CoA").  *Miller-El v. Johnson*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2).  Likewise, under AEDPA, appellate review of a habeas petition is limited to the issues on which a CoA is granted.  *See Crutcher v. Cockrell*, 301 F.3d 656, 658 n.10 (5th Cir. 2002) (holding a CoA is granted on an issue-by-issue basis, thereby limiting appellate review to those issues); *Lackey v. Johnson*, 116 F.3d 149, 151 (5th Cir. 1997) (holding the scope of appellate review of denial of a habeas petition limited to the issues on which CoA has been granted).  In other words, a CoA is granted or denied on an issue-by-issue basis, thereby limiting appellate review to those issues on which CoA is granted.  *Crutcher*, 301 F.3d at 658 n.10; 28 U.S.C. § 2253(c)(3).

A CoA will not be granted unless a petitioner makes a substantial showing of the denial of a constitutional right.  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Miller-El v. Johnson*, 537 U.S. at 336; *Slack v. McDaniel*, 529 U.S. 473, 483 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983).  To make such a showing, the petitioner need *not* show he will prevail on the merits but, rather, must demonstrate that reasonable jurists could debate whether (or, for that matter, agree) the petition should have been resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further.  *Tennard*, 542 U.S. at 282; *Miller-El*, 537

U.S. at 336. This Court is required to issue or deny a CoA when it enters a final Order such as this one adverse to a federal habeas petitioner. *Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts*.

The showing necessary to obtain a CoA on a particular claim is dependent upon the manner in which the District Court has disposed of a claim. "[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484). In a case in which the petitioner wishes to challenge on appeal this Court's dismissal of a claim for a reason not of constitutional dimension, such as procedural default, limitations, or lack of exhaustion, the petitioner must show jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* whether this Court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484 (holding when a district court denies a habeas claim on procedural grounds, without reaching the underlying constitutional claim, a CoA may issue only when the petitioner shows that reasonable jurists would find it debatable whether (1) the claim is a valid assertion of the denial of a constitutional right and (2) the district court's procedural ruling was correct). This court did not dispose of any of Perez's federal habeas corpus claims on procedural grounds. This court addressed the merits of all of Perez's federal constitutional claims.

Reasonable minds could not disagree with this Court's conclusion that, regardless of whether reviewed under the AEDPA or a *de novo* standard of review, all of Perez's complaints of ineffective assistance by his trial counsel (i.e., claims one, two three, and four) fail to satisfy the prejudice prong of *Strickland*. Perez is not entitled to a CoA from this Court.

Accordingly, it hereby **ORDERED** that (1) all relief requested in either Perez's original petition (ECF no. 1) or his Reply Brief (ECF no. 13) is **DENIED**; (2) Perez is **DENIED** a Certificate of Appealability with regard to all of his claims for relief; and (3) all pending motions are **DISMISSED** as moot.

　　　　**SIGNED December 18, 2024.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**